Leonie Elizabeth PALUMBO,
et al., Plaintiffs,

v.

TELE–COMMUNICATIONS,
INC. et al., Defendants.

Civ. A. No. 94–0245.

United States District Court,
District of Columbia.

Aug. 26, 1994.

Andrew G. Slutkin, Stephen L. Snyder, Robert J. Weltchek, Stephen L. Snyder & Associates, Baltimore, MD, for plaintiffs.

Vincent Hamilton Cohen, William David Nussbaum, Harry Thomas Jones, Jr., Jonathan S. Franklin, Hogan & Hartson, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This matter comes before the Court on defendants' motion to disqualify Stephen L. Snyder as counsel for the proposed plaintiff class. Also before the Court is defendants' motion to dismiss.

On February 8, 1994, plaintiffs filed this class action employment discrimination suit against Tele–Communications, Inc. ("TCI") and two of its senior officers. TCI is a Colorado-based company whose more than 300 subsidiaries and affiliates own and operate local cable television systems nationwide. Defendant John Malone is President and Chief Executive Officer of TCI and a major stockholder of that corporation. Defendant J.C. Sparkman is an Executive Vice President of TCI. The complaint alleges that TCI operated under a "system-wide employment policy of race-based disparate treatment" that was practiced "throughout [its] national system." Amended Complaint at ¶¶ 3, 29. Plaintiffs have asked this Court to certify a nationwide class consisting of all past, present, and future black employees of, or applicants for employment with, TCI. Plaintiffs' Motion for Class Certification at 1. The request for class certification covers "any job at any facility owned, managed, operated or otherwise existing under the control and authority of Defendant TCI. *Id.* at 2.

### Motion to Disqualify

Defendants' motion to disqualify plaintiffs' counsel stems from the fact that plaintiffs' lead counsel in this litigation, Mr. Stephen L. Snyder of the law firm of Stephen L. Snyder & Associates, was until recently a part owner of the Baltimore cable system and a director of its general partner. The Baltimore Cable system is an affiliate system of TCI. Defendants in their memorandum in support of the motion to disqualify outline the following facts:

■From June 20, 1990 to September 15, 1993, Mr. Snyder served as a director of UCTC of Baltimore, Inc. UCTC of Baltimore, Inc. is, in turn, a general partner of United Cable Television of Baltimore Limited Partnership—the partnership that holds the cable franchise for the City of Baltimore.

■Defendant TCI indirectly owns 75 percent of UCTC of Baltimore, Inc.

■From February 15, 1990 to early 1993, either Mr. Snyder, as an individual, or his law firm owned a 7.8 percent limited partnership interest in UCTC of Baltimore, Inc.

■The lawsuit filed on plaintiffs' behalf by Mr. Snyder's law firm alleges improprieties by TCI and all of its affiliates, specifically including the Baltimore affiliate on whose Board of Directors Snyder sat.

■The complaint makes specific allegations of wrongdoing against four of Snyder's co-directors on the UCTC of Baltimore, Inc. Board.

Defendants allege that Mr. Snyder's position on the UCTC of Baltimore, Inc. Board placed him in an oversight role over the activities of the Baltimore cable franchise and also gave him access to proprietary and confidential information relating to the Baltimore cable system's business practices, including employment nondiscrimination and affirmative action obligations. Defendants' Memorandum in Support of Defendants' Motion to Disqualify at 3–4.

As a basis for their motion to disqualify, defendants rely primarily on District of Columbia Rule of Professional Conduct 1.7(b)(4) which provides that a lawyer may not represent a client if that representation "will be or reasonably may be adversely affected" as a result of (1) "the lawyer's own financial, business, property, or personal interests," or (2)

the lawyer's responsibilities to a third party.[1] Defendants argue that Mr. Snyder has what can only be termed a "double-edged" conflict of interest. First, as a former director of one of TCI's affiliates, he has a director's duty of loyalty to that affiliate, and should not be permitted to act as plaintiffs' counsel where he could perhaps use against TCI confidential information gleaned during the course of the director relationship. Second, if the Baltimore cable system *did* have corporate policies embracing racial discrimination while Mr. Snyder sat on the Board, then Snyder has a personal interest in steering "the litigation in such a way as to limit his own potential responsibility and exposure to the claims of third parties." Memorandum in Support at 7. Defendants argue that the possibility that Mr. Snyder would tend to minimize his own personal culpability means that Mr. Snyder cannot adequately represent the members of the putative class. Mr. Snyder admits to a past ownership interest in the Baltimore cable franchise and to having sat on UCTC's Board of Directors for a short time.

Mr. Snyder outlined how he came to own part of the cable franchise in an affidavit submitted to the Court on July 8, 1994. On February 15, 1990, Snyder obtained 788.04 Class A units of a limited partnership interest in the United Cable Television of Baltimore Limited Partnership. These units were paid to him as a legal fee, earned while representing two black plaintiffs against United Cable Television Corporation. *See Elder, et al. v. United Cable Television Corporation, et al.* No. 86218012/CE 53979 (Circuit Court for Baltimore City). United Cable was a Denver, Colorado based major cable system that had been granted the cable franchise for Baltimore. The case was settled in February, 1990, by which time TCI (the defendant in the instant case) had a controlling interest in United Cable. The settlement terms of the *Elder* case included the transfer of 2189 partnership units to the *Elder* plaintiffs. Mr. Snyder's fee of 788.04 units was derived from the settlement. Included in the settlement was a provision by which Mr.

Snyder and Mr. Elder were added to the Board of Directors of the general partner, UCTC of Baltimore, Inc. The agreement also allowed United Cable to add four more members to keep their two-thirds control.

According to Snyder's affidavit, the Board of Directors of UCTC met only twice while Mr. Snyder was a Director; the meetings lasted no more than thirty minutes. The meetings which Mr. Snyder attended included only the election of officers, approval of the minutes of the last meeting and the discussion of audited financial statements. Snyder affidavit ¶¶ 9–12.

*Decision*

 The Court has within its inherent supervisory power the discretionary authority to oversee the professional attitudes of lawyers who appear before it. *Groper v. Taff,* 717 F.2d 1415, 1418 (D.C.Cir.1983). This supervisory power includes the authority to disqualify counsel when appropriate. Motions to disqualify are committed to the trial court's sound discretion. *Id; E.E.O.C. v. Orson H. Gygi Co., Inc.,* 749 F.2d 620, 621 (10th Cir.1984); *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir.1983).

 In considering a motion to disqualify, the District Court is charged with evaluating all the relevant circumstances and evidence. The Court must decide the issue in a manner that does no violence to the administration of justice and simultaneously "maintain[s] in the public mind a high regard for the legal profession." *Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.,* 518 F.2d 751, 754 (2nd Cir.1975) (internal quotations omitted). The standards for disqualification are somewhat amorphous, but the trial court is bound to make its determination taking into account all relevant factors:

> [T]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification

1. Defendants further argue that any disqualification of Mr. Snyder must be imputed to his law firm under D.C.Rule of Prof.Resp. 1.10(a).

proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

*Allen v. Academic Games League of America, Inc.*, 831 F.Supp. 785, 789 (C.D.Cal.1993) (quoting *In re Lee G.*, 1 Cal.App.4th 17, 26, 1 Cal.Rptr.2d 375 (1991)).

■■ The Court may disqualify an attorney for violation of the rules of ethics. But when considering a decision to disqualify under the rules of ethics governing the behavior of lawyers, the application of the rules should not be reflexive; the decision to disqualify cannot be made in a factual vacuum. The Connecticut Bar Association so wrote in a brief the logic of which has been embraced by two Circuit Courts of Appeals:

> It behooves this court, therefore, while mindful of the existing Code [of ethics], to examine afresh the problems sought to be met by that Code, to weigh for itself what those problems are, how real in the practical world they are in fact, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits.

*International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1293 (2nd Cir.1975). *See also Aetna Casualty and Surety Co. v. United States*, 570 F.2d 1197, 1202 (4th Cir.1978) (adopting same reasoning), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Gaumer v. McDaniel*, 811 F.Supp. 1113, 1117 (D.Md.1991), *affirmed sub nom Gaumer v. First Nat. Bank of North East*, 23 F.3d 400 (4th Cir.1994) (unpublished opinion).

■■ The Court finds that under all the circumstances of this case, Mr. Snyder, because of his prior association with a TCI affiliate, cannot be permitted to serve as plaintiffs' counsel in a class action lawsuit against TCI and others. Mr. Snyder and his firm must be disqualified from representing plaintiffs in the instant action.

The Court is cognizant that Mr. Snyder's minority ownership of .the Baltimore cable franchise and of his abbreviated tenure as director indicate that his involvement with the ownership and management of the Baltimore cable system were essentially fortuitous. Nevertheless, Mr. Snyder, by bringing a class action lawsuit against TCI alleging misdeeds by TCI affiliates, is essentially suing himself. The complaint makes allegations of misconduct against four of Snyder's co-directors, suggesting racial discrimination within the Baltimore cable system on whose Board Mr. Snyder sat. If Mr. Snyder was aware of these allegedly discriminatory practices while he sat on the Board, he could possibly be a defendant in the case. If, on the other hand, Mr. Snyder was unaware of the allegedly discriminatory practices, then he, as an attendee at the Board of Directors' meetings and as a director occupying a supervisory role in the Baltimore cable system who had no knowledge of any discriminatory behavior by the defendants during his tenure, would make a strong witness for the defense. Either way, Mr. Snyder is stuck. Knowledge of discriminatory behavior (which would of course be helpful to his clients) would implicate him in the misconduct alleged in the complaint and subject him to liability. Lack of knowledge by Mr. Snyder is helpful to the defendants in this case and could jeopardize the plaintiffs' case if Mr. Snyder is called as a witness.

The time may arise when Mr. Snyder will be in the position either to utilize in this litigation information gleaned from his position as director, or to steer the litigation in such a way as to limit his potential involvement as a defendant or witness. Without impugning Mr. Snyder's motives or questioning his vigorous prosecution of this matter to this point, the Court has a duty, out of fairness to all parties, to police the proceedings and disqualify counsel where there exists such a potential conflict. In this case, the appearance of impropriety is great.

■■ The fact that Mr. Snyder and his firm seek to represent a national class of plaintiffs makes the decision to disqualify even more compelling. If Mr. Snyder were representing only an individual plaintiff, he

 **133**

could conceivably seek a written waiver of conflict of interest. But in this case, Mr. Snyder seeks to represent a large, unenumerated and as yet unidentified class of plaintiffs. Unidentified class members cannot waive a potential conflict of interest. In the class action context, the Court has an obligation to closely scrutinize the qualifications of counsel to assure that all interests, including those of as yet unnamed plaintiffs are adequately represented. *See* Fed. R.Civ.P. 23(a)(4) (representative parties must "fairly and adequately represent the interests of the class"). This is because in certifying a class action, the Court confers on absent persons the status of litigants and "creates an attorney-client relationship between those persons and a lawyer or group of lawyers." *Kingsepp v. Wesleyan University*, 142 F.R.D. 597, 599 (S.D.N.Y.1992) (*quoting Amos v. Board of Directors*, 408 F.Supp. 765, 774 (E.D.Wis.1976)). Precisely because of the responsibility to absent class members, counsel's qualifications in the class action context are subject to a "heightened standard." *Smith v. Josten's American Yearbook Co.*, 78 F.R.D. 154, 163 (D.Kan.1978), *aff'd*, 624 F.2d 125 (10th Cir.1980). *See also Miller v. United States*, 24 F.E.P.Cases 696 (D.D.C.1980) ("[A]ttorneys in class actions are held to higher standards of competence and diligence than counsel in other lawsuits....."). Because of the conflict of interest detailed above, Mr. Snyder and his firm do not meet the heightened standard required of attorneys in class action cases.

Mr. Snyder's ownership and directorial interests in one of TCI's affiliates came about because of a successful adversarial race discrimination lawsuit.[2] He now seeks to act as counsel for a national class of minority employees who allegedly have been discriminated against by TCI, the very firm on whose affiliate's Board he sat as a director. Despite his claims that he learned nothing of import during his tenure on the Board, the

Court believes that disqualification of Mr. Snyder and his firm is required.

Plaintiffs will be given sixty days to substitute counsel. Defendant's motions to dismiss and all other motions in this matter will not be ruled on until new counsel has noticed his appearance.

---

**2.** This case demonstrates the adverse consequences that can result from a settlement where counsel accepts as his fee an equity interest and assumes directorial responsibilities in the very entity counsel sued. From the moment counsel agreed to accept this unorthodox form of compensation, counsel should have realized that his ability to bring future suits against that entity, or its affiliates, for activities occurring during the period he held those interests would be virtually precluded.