**In re POTASH ANTITRUST LITIGATION.**

**MDL No. 981.
Civ. No. 3–93–197.**

United States District Court,
D. Minnesota,
Third Division.

May 15, 1995.

Alex Dimitrief, Chicago, IL and Steven C. Tourek, St. Paul, MN, for C.F.

Mark Reinhardt and Harvey H. Eckart, St. Paul, MN, for plaintiffs.

Douglas E. Rosenthal and Leon R. Goodrich, St. Paul, MN, for defendants.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motion of CF Industries, Inc. ("CF"), for an Order determining its right to participate, as one who has filed a Notice of Appearance, in the further pretrial processing of these proceedings.

A Hearing on the Motion was conducted on May 11, 1995, at which time CF appeared by Alex Dimitrief and Steven C. Tourek, Esqs., the Plaintiffs appeared by Mark Reinhardt and Harvey H. Eckhart, Esqs., and the Defendants appeared by Douglas E. Rosenthal and Leon R. Goodrich, Esqs.

For reasons which follow, we conclude that CF's application to appear is premature and should be denied.[1]

### II. *Factual Background*

CF is an Illinois corporation which, as an interregional cooperative, is owned by eleven regional cooperatives for the purpose of manufacturing and wholesaling chemical fertilizers.[2] CF has represented, and the opposing parties have not disputed, that it had purchased more than five million short tons of muriate of potash, during the period defined by the Court's class certification Order, and that more than 90 percent of those purchases were made directly from one or more of the Defendants, including Potash Corporation of Saskatchewan; IMC Fertilizer; Noranda; Cominco; and New Mexico Potash. CF has further represented, without contradiction, that its potash purchases have exceeded, by a large margin, any such purchases by the class representatives. According to CF, "CF and its ten U.S. Members are, therefore, members of the plaintiff class and have a real and substantial interest in these proceedings."

CF requests the Court to permit it to participate in these proceedings in the following respects:

1. That CF be permitted to appear so as to assist its constituent members in making an informed decision on whether to opt in, opt out, or otherwise participate in this class action;

2. That CF be placed on the service list;

3. That CF be permitted to obtain copies of all pleadings, discovery, and other papers which have or will be filed, served,

---

1. Our decision moots the Defendants' contention that counsel for CF, in the person of James D. Sonda ("Sonda") from the Chicago Office of Kirkland & Ellis, should be disqualified from these proceedings by virtue of his impermissible access to the materials or commentary of Keith Barton ("Barton"), who was the former general counsel to the Potash Corporation of Saskatchewan. We have reviewed, however, a portion of the transcript from the deposition of Joel Davidow ("Davidow"), an attorney with Dickstein, Shapiro & Warren, in Washington, D.C., which reveals that Davidow conferred with Sonda for a period of three hours, during which Sonda was provided the substance of Barton's allegations and a description of Barton and the probable legal issues concerning his testimony. Since we need not now reach the issue of whether Kirkland & Ellis should be disqualified from participating in this matter, we merely note that, before any participation may occur by either Kirkland

& Ellis or by in-house counsel for certain of the member cooperatives of CF, who also conferred with Davidow, an affidavit must be submitted to the Court, as detailed in the District Court's Order of December 8, 1993.

2. The member owners of CF are: Agway, Inc., of Syracuse, New York; CENEX, of St. Paul, Minnesota; Coopérative fédérée de Québec, of Montréal, Québec; Countrymark Cooperative, Inc., of Indianapolis, Indiana; Gold Kist, Inc., of Atlanta, Georgia; GROWMARK, Inc., of Bloomington, Illinois; Intermountain Farmers Association, of Salt Lake City, Utah; Land O'Lakes, Inc., of Minneapolis, Minnesota; MFA Incorporated, of Columbia, Missouri; Southern States Cooperative, Inc., of Richmond, Virginia; and Tennessee Farmers Cooperative, of La Vergne, Tennessee.

exchanged or otherwise produced in these matters, including responses to discovery requests and deposition transcripts;

4. That counsel for the class Plaintiffs be directed to provide CF with access to all such documents even though the documents may be subject to this Court's Confidentiality Orders, so long as CF agreed to be bound by the terms of those Orders;

5. That the attorneys for CF may be permitted to disclose such confidential materials to any of its Members, but only to the extent that those Members agree to be bound by the terms and conditions of the Court's Confidentiality Orders.

Arguing that CF's requests would, essentially, grant them the standing of an intervenor, both the Plaintiffs and the Defendants have opposed CF's Motion.

As should be obvious, we are called upon to determine the proper mission to be served by an "appearance" in a class action proceeding, as that term is utilized in Rule 23(c)(2)(C).

### III. *Discussion*

■ As here pertinent, Rule 23(c)(2) provides as follows:

> The notice [to the certified class] shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) *any member who does not request exclusion may, if the member desires, enter an appearance through counsel.*

[Emphasis supplied].

Given the clear language of the Rule, no one disputes the right of CF to enter an appearance in these proceedings through counsel— at least at some point in time. Where the parties diverge is with respect to the timing of the "appearance," and to the intensity of involvement that an "appearing" member

may exercise in the pretrial processing of the class action.

■ As to timing, we agree with the Plaintiffs that the phrasing of the Rule articulates an intendment that a party may elect to appear after it has decided not to opt-out of the class. If, as CF contends, the role of an appearance is to assist a class member in deciding whether to opt-in or -out of the class, then the drafters of the Rule could have made that intention plain, which they did not. We think the phasing of an appearance, in the kinetics of a class action, is properly sequenced when it is deferred until the election to formally participate in the class has been made by the affected member. Otherwise, counsel for the class, as well as counsel for the Defendants, could be overwhelmed with discovery and information requests by innumerable potential class members whose ultimate allegiance may not be disclosed until an election is made to participate within the class or to be excluded.

■ The strategic dilemmas posed by a premature Rule 23 appearance are evidenced by the circumstances which presently confront the Court. In a most rudimentary "whose-ox-is-being-gored" approach, the Plaintiffs have no complaint in allowing CF to undertake discovery against the Defendants, nor do the Defendants perceive any peril in permitting CF to inspect the discovery that the Plaintiffs have amassed to date. Rather, each opposes CF's requests for information only to the extent that they, themselves, may have to share any information with CF at this time. From the Plaintiffs' perspective, until CF elects to accept or reject class standing, the wholesale disclosure of their trial preparations may only be promoting a claim which could be adverse to the Plaintiffs' own interests and, indeed, CF acknowledges that counsel for certain of the Defendants had approached them for possible assistance in opposing the Plaintiffs' class certification Motion.[3]

---

**3.** CF suggests that, since it is within the certified class, counsel for the Plaintiffs have a professional obligation, which arises from their attorney-client relationship with all of the potential class members, to disclose their work product to CF. In support of this proposition, CF cites *Palumbo*

*v. Tele–Communications, Inc.,* 157 F.R.D. 129, 133 (D.D.C.1994), and *Kleiner v. First Nat. Bank of Atlanta,* 102 F.R.D. 754, 769 (N.D.Ga.1983), but we do not read either of these decisions, or the authorities upon which their holdings are based, as expansively as does CF. While we

In turn, the Defendants pointedly underscore the potentiality that allowing CF to discover the same documents, that the Defendants had previously produced for the inspection of class counsel, would protract their discovery responsibilities to the likely detriment of their ability to prepare their defenses to the class claims. Notably, the Plaintiffs join in voicing a pressing concern that CF's discovery efforts could substantially impair the parties' ability to adhere to the Court's Rule 16 Scheduling Order notwithstanding diligence on their own part. We share that same concern and find unpersuasive CF's contention that a meaningful election to class standing requires its counsel to engage in an extensive investigation and appraisal of the facts which, concededly, are available to the Plaintiffs and Defendants alike.

■ In so concluding, we would merely note that this case has been pending for a sufficient period to permit any interested member of the certified class to have conducted its own factual investigation, and that, as a member of the certified class, CF has the opportunity of conferring with class counsel so as to ascertain their diligence, competence and wherewithal to press the class claims against these Defendants. If CF concludes, after electing to remain in the class, that its interests would be better served through an appearance by its own counsel or,

if CF should wish to participate through intervention, then the procedures of Rule 23(c)(2) will continue to be readily accessible for those purposes. Notably, however, the rights attendant to an appearance, or to intervenor standing, are subject to the supervisory powers of this Court to enter appropriate Orders for the protection of the class, and for the fair conduct of the action. *Rule 23(d), Federal Rules of Civil Procedure.* At this juncture, we find CF's interest in making an appearance to be premature, and to potentiate toward an unfairness to the class and to the conduct of this action through unnecessary delay, complication and expense to all concerned. Therefore, CF's Motion to participate in these proceedings, by making a Rule 23(c)(2)(C) appearance, is denied at this time.[4]

NOW, THEREFORE, It is—

ORDERED:

That CF's Motion for leave to appear in this matter, pursuant to Rule 23(c)(2)(C) [Docket No. 405], is denied, but without prejudice to its subsequent renewal as the circumstances should warrant.

---

agree that a potential attorney-client relationship is formulated upon the certification of a class, "it cannot truly be said that [counsel for the class] fully 'represents' prospective class members until it is determined that they are going to participate in the class action." *Kleiner v. First Nat. Bank of Atlanta,* supra at 769. Certainly, counsel for the class has an obligation to diligently and competently prosecute the class claims, but whether a full attorney-client relationship shall materialize will depend upon the putative class member's decision to accept or reject class standing.

As a consequence, to permit CF to inspect those documents that class counsel have culled, from the wealth of materials that the Defendants have produced to date, could contravene the interests of the class as a whole, particularly if CF should ultimately decide to opt-out of the class. See, *James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 144 (D.Del.1982) (process of selecting and distilling extensive document discovery deserves work product protection).

4. What little authority that is extant on this issue supports the decision we make. As noted by Professor Kaplan, who was the reporter for the Advisory Committee which drafted the pertinent amendments to Rule 23 in 1966:

I read this "appearance" as entitling counsel to receive the papers in the action to enable him to follow the case with a view to deciding, e.g., whether he should move to intervene. If 'appearance' is read as enabling the class member to be admitted automatically into the action as a party, it would stand in odd contrast to intervention in the action under Rule 24, which is not automatic and requires a showing.

Kaplan, "Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)," 81 *Harv.L.Rev.* 356, 392 n. 137 (1967); and, cf., *Aks v. Southgate Trust Co.,* 1992 WL 401708 *14 (D.Kan.1992); *Ramsey v. Arata,* 406 F.Supp. 435, 442 (N.D.Tex.1975); *3B Moore's Federal Practice,* § 23.90[2], at pages 23–513 through 23–515.