Second Division

Nos. 1-96-2155, 1-96-2156, 1-96-2157, 1-96-2158, 1-96-2159, 1-96-2160, 1-96-2162, 1-96-2163, 1-96-2164, 1-96-2165, 1-96-2167, 1-96-2168, 1-96-2170, 1-96-2171, 1-96-2172, 1-96-2173, 1-96-2175, 1-96-2176, 1-96-2177, 1-96-2179, 1-96-2180, 1-96-2181 (Cons.)

In
 
re
 CHICAGO FLOOD LITIGATION ) Appeal from the

) Circuit Court of

(Class Plaintiffs and Class Counsel, ) Cook County.

Appellants, )

)

v. )

)

Standard Mutual Insurance Company ) Honorable

a/s/o I & M Enterprises 
et
 
al.
, ) Donald J. O'Brien,

Appellees). ) Judge Presiding.

JUSTICE RAKOWSKI delivered the opinion of the court:

This case arises out of the Chicago Flood litigation in which class plaintiffs and certain opt-out plaintiffs brought an action in the circuit court of Cook County against the City of Chicago (City) and Great Lakes Dredge and Dock Company (Great Lakes) for injuries suffered as a result of the flood.  See 
In re Chicago Flood Litigation
, Nos. 80460, 80535 (Cons.), 1997 WL 68574 (1997).  The question in this case involves solely the issue of whether class counsel are entitled to attorney fees from the opt-out plaintiffs (appellees).  Class counsel contend they are entitled to fees pursuant to the Attorneys Lien Act (770 ILCS 5/1 (West 1994)) for work performed to benefit appellees.  They also contend they are entitled to attorney fees under the doctrine of 
quantum
 
mer
uit
.

The circuit court held that no attorney's lien existed and class counsel were not entitled to fees under 
quantum
 
meruit
.  Class counsel filed a motion to reconsider, which the circuit court denied.  We affirm.

I.  FACTS

In April 1992, the underground freight tunnel system in the central business district of Chicago flooded.  The circuit court of Cook County certified a class action against the City on November 24, 1992, and against Great Lakes on April 13, 1993, for damages and economic loss to class plaintiffs as a result of the flood.  The circuit court also appointed class counsel (appellants) on November 24, 1992.  At various times after class certification, the circuit court authorized some plaintiffs to opt out of the certified class.  The opt-out plaintiffs are comprised mostly of insurance companies who became subrogated to the claims of class members and obtained their interests or assignments by payments of insurance claims to those class members.

On the date of the flood and soon thereafter, various plaintiffs retained their own counsel.  They subsequently opted out of the class by filing notices of exclusion from the class pursuant to section 2-804(b) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-804(b) (West 1994)).  These opt-out plaintiffs also filed their own separate complaints against the City and Great Lakes.  It is not apparent from the briefs or the record when exactly all of the named appellees opted out of the class.  The opt out deadline was sometime in June or July 1995.  Class counsel alleged at oral argument that some appellees opted out up to two years after class certification and that some of the opt outs were untimely.  However, this argument is not substantiated by the record, class counsel has offered no specific facts in support thereof, and the issue was not raised below.  Accordingly, any argument as to the propriety of the opt outs is deemed waived and for purposes of this disposition, we assume that all appellees opted out within the set time frame.  In fairness to class counsel, we also assume that class counsel conferred some benefit upon both class plaintiffs and the opt-out plaintiffs (appellees).  This assumption is supported by the circuit court's comment that class counsel had conferred substantial benefits on the opt-out plaintiffs.

After appellees filed notices of exclusion but before the circuit court entered orders approving the opt outs, class counsel served notice of an attorney's lien on the City and Great Lakes claiming a lien on the interests of the opt-out plaintiffs.  The City and Great Lakes then entered into settlement agreements with appellees.  Beginning on November 27, 1995, appellees filed motions or petitions to adjudicate the purported attorney's lien that class counsel served on the City and Great Lakes.  On January 23, 1996, class counsel filed a petition for attorney fees under the doctrine of 
quantum
 
meruit
.

The circuit court ruled that class counsel had no lien under the Attorneys Lien Act.  The court found that class counsel did not have a written retainer agreement with the opt-out plaintiffs and, therefore, no attorney-client relationship existed.  The court also ruled that class counsel were not entitled to attorney fees under 
quantum
 
meruit
 because no common fund was created by class counsel.  Rather, the fund was created solely for the opt-out plaintiffs by their independent counsel.  Also, because there was no attorney-client relationship between the opt-out plaintiffs and class counsel, no recovery could be had under 
quantum
 
meruit
.  To hold otherwise would subject the opt-out plaintiffs to paying attorney fees to both their own attorneys and class counsel and would create somewhat of an unjust enrichment in favor of class counsel.

II.  ANALYSIS

A.  Nature of the Attorney-Client Relationship

The issue on appeal involves the nature and extent of the attorney-client relationship between class counsel and the opt-out plaintiffs.  Class counsel contend they are entitled to fees from the opt-out plaintiffs because the court's certification of the class and appointment of class counsel created an attorney-client relationship between class counsel and all class plaintiffs.

The attorney-client relationship is a voluntary, contractual relationship that requires the consent of both the attorney and client.  
Corti v. Fleisher
, 93 Ill. App. 3d 517, 521 (1981); 
York v. Stiefel
, 109 Ill. App. 3d 342, 348 (1982).  The relationship cannot be created by an attorney alone and generally the duty falls upon a potential client to initiate contact with the attorney.  
Holstein v. Grossman
, 246 Ill. App. 3d 719, 743 (1993); 
Corti
, 93 Ill. App. 3d at 521; J. Kennedy, 
Class Actions:  The Right to Opt Out
, 25 Ariz. L. Rev. 3, 25 (1983).

Contrary to these basic tenets, the class action permits a representative party, a lawyer, and a court to initiate a mass action on behalf of similarly situated class members without their consent.  In certifying a class action, the court confers the status of litigant upon class plaintiffs and creates an attorney-client relationship between those plaintiffs and a court-designated lawyer.   
Amos v. Board of School Directors
, 408 F. Supp. 765, 774 (E.D. Wis. 1976), 
aff'd
 
sub
 
nom.
 
Armstrong v. Brennan
, 539 F.2d 625 (7th Cir. 1976) (issue not discussed on appeal), vacated and remanded on other grounds, 433 U.S. 672, 53 L. Ed. 2d 1044, 97 S. Ct. 2907 (1977).  This attorney-client relationship is limited, however, and is different in the class context than it is in a traditional, non-class situation.  
In re Potash Antitrust Litigation
, 162 F.R.D. 559, 561-62 n. 3 (D. Minn. 1995); 
Tedesco v. Mishkin
, 629 F. Supp. 1474, 1482 (S.D. N.Y. 1986); 
Kleiner v. First National Bank of Atlanta
, 102 F.R.D. 754, 769 (N.D. Ga. 1983)
.

The attorney-client relationship in the class context also differs among plaintiffs.  The relationship between the class representative plaintiff and class counsel is one of private contract, whereas the relationship between absent class members and class counsel is one of court creation.  
Amos
, 408 F. Supp. at 775, 
aff'd
 
sub
 
nom.
 
Armstrong
, 539 F.2d 625 (issue not discussed on appeal), vacated and remanded on other grounds, 433 U.S. 672, 53 L. Ed. 2d 1044, 97 S. Ct. 2907.  Accordingly, class counsel will be deemed to fully represent all class members only after a court has certified the class and the opt-out time period has expired, giving putative class members time to decide whether to participate in the class.  
Resnick v. American Dental Ass'n
, 95 F.D.R. 372, 377 (N.D. Ill. 1982); 
In re Potash Antitrust Litigation
, 162 F.R.D. at 561-62 n. 3; 
Tedesco
, 629 F. Supp. at 1482-83; 
Kleiner
, 102 F.R.D. at 769.  During the opt-out period, the status of class members is amorphus because the putative class may contain members who will be excluded from the class.  Accordingly, the actual scope of the class cannot be determined until after the exclusion period has expired.

Where class counsel has a fee agreement with the class representative, that agreement does not entitle class counsel to attorney fees from the rest of the class who have no agreement with counsel or who have opted out of the class.  H. Newberg, Newberg on Class Actions §13.55, at 13-140 (3d ed. 1992); see 
Shelton v. Simpson
, 441 S.W.2d 421, 423 (Ky. Ct. App. 1969).  Class actions are representative lawsuits to which absent class members are passive parties.  
American Pipe & Construction Co. v. Utah
, 414 U.S. 538, 551-53, 38 L. Ed. 2d 713, ____, 94 S. Ct. 756, 765-66 (1974).  Absent class members did not authorize or rely on the class representative and class counsel to commence and maintain the class action.  As such, they do not occupy any direct attorney-client relationship with class counsel and should not be required to pay fees automatically.  See H. Newberg, Newberg on Class Actions §14.02 (3d ed. 1992); 
Winfield v. St. Joe Paper Co.
, 20 F.R.D. Cas. (BNA) 1093, 1094 (N.D. Fla. Sept. 19, 1977) (class members did not retain class counsel and are relatively passive beneficiaries of the efforts in their behalf); 
American Pipe & Construction Co.
, 414 U.S. at 552, 38 L. Ed. 2d at ____, 94 S. Ct. at 765 (class members do not have a duty to counsel until the existence and limits of the class are established).

To be sure, class representatives and class counsel are not entitled to charge absent class members for reimbursement of attorney fees or costs if the class action is unsuccessful.  
Deposit Guaranty National Bank v. Roper
, 445 U.S. 326, 343 n. 1 (Stevens, concurring), 63 L. Ed. 2d 427, ____, 100 S. Ct. 1166, 1176 (1980).  In turn, absent class members of a successful class suit are required to pay proportional fees and litigation costs only to the extent they shared in class recovery and elected to accept the benefits of the class litigation.  
Wright v. Schock
, 742 F.2d 541, 545 (9th Cir. 1984); 
Lamb v. United Security Life Co.
, 59 F.R.D. 44, 48-49 (S.D. Iowa 1973).

B.  Attorneys Lien Act

Class counsel first contend they are entitled to fees from the opt-out plaintiffs under the Attorneys Lien Act (770 ILCS 5/1 (West 1994)), which allows for an attorney's lien on a client's recovery provided that the lien is perfected as required by the Attorneys Lien Act.  To enforce such lien, an attorney shall serve written notice upon his client claiming the lien and stating his interest.  The Attorneys Lien Act is a derogation of common law and must be strictly construed.  
Coyle v. Velie Motors Corp
, 305 Ill. 135 (1940); 
Kannewurf v. Johns
, 260 Ill. App. 3d 66, 76 (1994).  In order to create an effective lien there must be an attorney-client relationship and notice of the lien must be served during that relationship.  
Rhoades v. Norfolk & Western Ry. Co.
, 78 Ill. 2d 217, 221-22 (1979).  The ministerial act of filing a notice of lien is insufficient to create a lien under the Attorneys Lien Act where there is no attorney-client relationship.  
Marlowe v. Edward R. Vrdolyak, Ltd.
, No. 1-95-0673 (March 31, 1997).

Although a limited attorney-client relationship existed between class counsel and the opt-out plaintiffs upon certification of the class action, the relationship was terminated when appellees elected to opt out of the class.  In exercising the inherent right to be excluded from the class and retain independent counsel, the opt-out plaintiffs merely made a decision that they were entitled to make as a matter of law.

The right of exclusion essentially gives class members a veto power over participation in a class.  To restrict the right to opt out would result in individual class members losing control over their claims and being forced to accept court-appointed counsel without regard to their independent choice of counsel.  We believe the right to opt out should remain unrestricted and that individuals who opt out of class actions within the proper time frame should not be penalized for exercising this right by requiring them to pay fees to class counsel and their individual attorneys.

Unlike the federal statute, the Illinois statute does not provide for a mandatory class in which class members cannot seek exclusion.  Thus, in Illinois, persons who have elected to be excluded from the class pursuant to section 2-805 of the Code (735 ILCS 5/2-805 (West 1994)) are not bound by a judgment or settlement in a class action.  
Fisher v. Capesius
, 369 Ill. 598, 604-05 (1938).  These opt out plaintiffs are left in the same position that they were in before the class action was filed and their substantive rights are not affected.  They still have the right to sue individually and retain their own counsel.  G. Rutherglen, 
Better Late than Never:  Notice and Opt Out at the Settlement Stage of Class Actions
, 71 N.Y.U. L. Rev. 258, 286-87 (1996).

In the instant case, appellees opted out of the class and retained their own attorneys with approval of the circuit court.  To require these opt outs to pay class counsel under the Attorneys Lien Act would be contrary to the above case law and would substantially impair the right to opt out.  Further, such a holding would contradict the consensual nature of an attorney-client relationship in that it would require all putative class members to be obligated to class counsel even though they timely exercised their right of exclusion and retained their own counsel.  Therefore, we hold that under the Attorneys Lien Act, opt-out plaintiffs are not required to pay attorney fees to class counsel for counsel's unsolicited representation where such persons properly excluded themselves from the class.  See 
Client Follow-Up Co. v. Hynes
, 105 Ill. App. 3d 619, 626-27 (1982).

C.  
Quantum
 
Meruit

Class counsel also contend they are entitled to a hearing on the issue of fees under the doctrine of 
quantum
 
meruit
.  We disagree.

In a 
quantum
 
meruit
 action, the individual seeking compensation has benefited another through his or her actions and seeks payment for the value of the service performed.  The right to attorney fees based on 
quantum
 
meruit
 does not exist unless there is an underlying attorney-client relationship where the client expressly or impliedly agrees to pay fees.  
In re Estate of Callahan
, 144 Ill. 2d 32, 40 (1991); 
Wolff v. Ampacet Corp.
, 284 Ill. App. 3d 824, 829-30 (1996); 
Estate of Healy v. Tierney
, 137 Ill. App. 3d 406, 409 (1985).

The case of 
In re Folding Carton Antitrust Litigation
, 1982-1 Trade Cas. (CCH) par. 64,689 (N.D. Ill. Oct. 14, 1980), is instructive.  In that case, class counsel argued that it was unjust to allow the opt-out plaintiffs to freely use the fruit of class counsel's effort and coattail for evidence and discovery without having to pay class counsel attorney fees.  The court rejected that argument, noting it is unlikely that coattailing will be such a cheap, effective, and complete method of trial preparation that potential class members will be tempted to opt out and proceed alone, except where the amount of potential damages justifies opting out without regard to the use of class evidence.  
In re Folding Carton Antitrust Litigation
, 1982-1 Trade Cas. (CCH) at 73,753.  In addition, the court held that it would be unfair to exclude relevant evidence so as to punish those who exercised their right to opt out, particularly where the opt-out plaintiffs were not simply coattailing but had participated in every stage of discovery in the class action.  
In re Folding Carton Antitrust Litigation
, 1982-1 Trade Cas. (CCH) at 73,753.

In the instant case, the opt-out plaintiffs retained their own attorneys on the date of the flood and soon thereafter.  Their counsel participated in the early stages of litigation and obtained a settlement on behalf of their clients before the class action had resulted in a judgment or settlement.  Undeniably, the Chicago Flood litigation involved numerous parties and complex issues and it is very unlikely that coattailing would have been an effective or complete method of trial preparation.  We do not mean to suggest that class counsel did not confer some benefit on appellees, however, that alone does not automatically entitle counsel to fees.  See 
Hamer v. Kirk
, 64 Ill. 2d 434, 442 (1976); 
Process Color Plate Co. v. Chicago Urban Transportation District
, 125 Ill. App. 3d 885, 891 (1984).  Therefore, we reject class counsel's argument that there will be little incentive for potential class members to remain in the class if they are allowed to use segments of discovery and public documents of the class action case to prepare their own claims.

Class counsel were not without recourse, however, earlier in the proceedings.  They could have asked the circuit court to impose shorter deadlines for class members to opt out or objected to the propriety of the opt outs.  Time limits can be imposed on the right to opt out, but not in a way that effectively denies class members the right to opt out.  Class members must be given a reasonable period of time to opt out and pursue litigation separately if they object to representation by class counsel.

The cases cited by class counsel in support of the 
quantum
 
meruit
 theory are unpersuasive.  Most deal with an individual client and his attorney; they are not class action cases.  
Amos v. Board of School Directors
, 408 F. Supp. 765, 774-75 (E.D. Wis. 1976), 
aff'd
 
sub
 
nom.
 
Armstrong v. Brennan
, 539 F.2d 625 (7th Cir. 1976), vacated and remanded on other grounds, 433 U.S. 672, 53 L. Ed. 2d 1044, 97 S. Ct. 2907 (1977), is a class action case relied on by class counsel for the proposition that in certifying a class action, the court creates an attorney-client relationship between class members and class counsel.

In 
Amos
, the court addresses the adequacy of appointed class counsel and the propriety of appointing class counsel to represent the interests of absent class members.  The court did not address the present situation where putative class members are present during the litigation and elect to opt out of the class and retain their own counsel.  The 
Amos
 court, rather, focused on protection of the rights of absent class members and on the court's selection of adequate class counsel.  The issue 
of the attorney-client relationship was not discussed on appeal.  
Armstrong
, 539 F.2d 625, vacated and remanded
, 433 U.S. 672, 53 L. Ed. 2d 1044, 97 S. Ct. 2907.  Accordingly, we are unpersuaded by class counsel's reliance on 
Amos
.

D.  Common Fund

Finally, we address whether the common fund doctrine is a proper basis for awarding class counsel attorney fees.  We hold it is not.

"The common fund doctrine allows one who 'creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees.' "  
Brundidge v. Glendale Federal Bank
, 168 Ill. 2d 235, 238 (1995), quoting 
Swedish Hospital Corp. v. Shalala
, 1 F.3d 1261, 1265 (D.C. Cir. 1993).  This doctrine requires courts to exercise their inherent powers of equity and is designed to prevent unjust enrichment.  
Brundidge
, 168 Ill. 2d at 238.  "By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads the costs of litigation proportionately among those who will benefit from the fund."  
Brundidge
, 168 Ill. 2d at 238.  However, in the absence of a common fund, a plaintiff's attorney is not entitled to fees merely because he or she has conferred a benefit on members of a class.  
Hamer
, 64 Ill. 2d at 442; 
Process Color Plate Co.
, 125 Ill. App. 3d at 891.

The common fund doctrine contemplates that a common fund be created by class counsel for the benefit of the class and that the fund is within the control of the court.  In the instant case, the fund set up by the City and Great Lakes was for the benefit of the opt-out plaintiffs only, not for similarly situated class members.  The fund was not within the court's control, it was not for the benefit of all class members, and it was not procured by class counsel but rather by the opt-out plaintiffs' independently retained attorneys.  It is axiomatic that class counsel can only receive fees when they successfully recover a fund for the benefit of the class.  However, since the class action did not create a fund, nor did the class members benefit from the fund created, class counsel are not entitled to fees under the common fund doctrine.

III.  CONCLUSION

In conclusion, we find that class counsel are not entitled to fees from the opt-out plaintiffs.  Once the opt-out plaintiffs exercised their right of exclusion, all of the hallmarks of the attorney-client relationship were destroyed.  To require opt outs to pay fees to both class counsel and their independently retained counsel would penalize them for exercising their inherent right of exclusion.  We believe this right should remain unrestricted.  Accordingly, we affirm the judgment of the circuit court holding that class counsel are not entitled to recover fees from the opt-out plaintiffs 
under either the Attorneys Lien Act or equitable principles
.

Affirmed.

DiVITO, P.J., and TULLY, J., concur.